Citation Nr: 1554532 
Decision Date: 12/31/15 Archive Date: 01/07/16

DOCKET NO. 09-49 919 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Whether new and material evidence has been received to reopen a claim of service connection for ischemic heart disease. 

2. Whether new and material evidence has been received to reopen a claim of service connection for type 2 diabetes mellitus. 

3. Entitlement to service connection for erectile dysfunction.

4. Entitlement to service connection for migraine headaches, including as secondary to service-connected psychiatric disability and/or medications associated with service-connected disabilities.

5. Entitlement to a rating in excess of 30 percent for major depressive disorder.

6. Entitlement to a compensable rating for postoperative left inguinal hernia disability prior to April 27, 2010 and in excess of 10 percent from that date.


REPRESENTATION

Appellant represented by: North Carolina Division of Veterans Affairs


WITNESSES AT HEARING ON APPEAL

Veteran and his wife


ATTORNEY FOR THE BOARD

M. Young, Counsel


INTRODUCTION

The Veteran had active duty service from July 1963 to June 1967, September 1967 to September 1969, and from September 1971 to January, 1985. He also served in a Reserve component of the Navy.

These matters are before the Board of Veterans' Appeals from rating decisions by a Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina. A July 2008 rating decision, in pertinent part, denied service connection for migraine headaches and a compensable rating for postoperative left inguinal hernia. In March 2011 a hearing was held before a decision review officer. In an interim March 2012 rating decision, the rating for postoperative left inguinal hernia was increased to 10 percent effective April 27, 2010. In July 2014, a Travel Board hearing was held before the undersigned. Transcripts of both hearings are associated with the record. In November 2014 the Board remanded the matters for additional development.

As discussed below, the Board finds that the Veteran has filed a timely notice of disagreement (NOD) with an August 2013 rating decision, which declined to reopen the claims of service connection for ischemic heart disease and type 2 diabetes mellitus because new and material evidence had not been submitted, denied service connection for erectile dysfunction and denied an increased rating in excess of 30 percent for major depressive disorder, requiring the Board to take jurisdiction over the issues for the limited purpose of remanding them to direct the issuance of a statement of the case (SOC). Manlincon v. West, 12 Vet. App. 238 (1999). These issues are identified as issues numbered 1, 2, 3 and 5 on the first page of this decision.

The issues of whether new and material evidence has been received to reopen a claim of service connection for ischemic heart disease and type 2 diabetes mellitus, entitlement to service connection for erectile dysfunction and migraine headaches, including as secondary to service-connected psychiatric disability and/or medications associated with service-connected disabilities, and entitlement to a rating in excess of 30 percent for major depressive disorder are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. Prior to April 27, 2010, the Veteran's postoperative left inguinal hernia was manifested by repair with a well-healed scar without residual hernia recurrence.

2. From April 27, 2010, the Veteran's left inguinal hernia did not manifest with postoperative recurrence of a small left inguinal hernia.


CONCLUSION OF LAW

The criteria for a compensable rating for postoperative left inguinal hernia repair prior to April 27, 2010 and in excess of 10 percent from that date have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.7, 4.114 Diagnostic Code (Code) 7338 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Veterans Claims Assistance Act of 2000 (VCAA)

The requirements of 38 U.S.C.A. §§ 5103 and 5103A have been met. In a claim for increase, the VCAA requirement is generic notice, that is, notice of the type of evidence needed to substantiate the claim, namely, evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment, as well as general notice regarding how disability ratings and effective dates are assigned. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). By correspondence dated in November 2007, VA notified the Veteran of the information needed to substantiate and complete his claim, to include notice of the information that he was responsible for providing and of the evidence that VA would attempt to obtain. The Veteran was also provided notice as to how VA assigns disability ratings and effective dates. 

In addition, the Veteran's service treatment records (STRs) and pertinent postservice treatment records have been secured. VA examinations were provided in conjunction with this appeal in June 2008 and April 2015. Together, these examinations reflect a consideration of the entire record and describe the pertinent findings and features needed to apply the relevant rating criteria. The Veteran has not identified any pertinent evidence that remains outstanding. VA's duty to assist is met.

At the Travel Board hearing in July 2014, the undersigned identified the issue on appeal and discussed the Veteran's symptomatology that he contends warrants an increased rating. The undersigned sought to identify any outstanding evidence that might substantiate his claim. The Board finds that, consistent with Bryant v. Shinseki, 23 Vet. App. 488 (2010), the undersigned complied with the duties set forth in 38 C.F.R. § 3.103(c)(2). The Veteran has not alleged that notice at the hearing was less than adequate.

Legal Criteria, Factual Background, and Analysis

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Reasonable doubt as to the degree of disability will be resolved in the Veteran's favor. 38 C.F.R. § 4.3. 

Where an increase in the level of a service-connected disability is at issue, such as is the case with the Veteran's service-connected postoperative left inguinal hernia, the primary concern is the present level of disability. See Francisco v. Brown, 7 Vet. App. 55 (1994). Staged ratings are, however, appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. In this case, the assignment of a 10 percent rating effective during the appeal period reflects a "staged rating." See Hart v. Mansfield, 21 Vet. App. 505 (2007) (If the disability has undergone varying and distinct levels of severity throughout the appeal period, staged ratings may be assigned.) 

The relevant focus for adjudicating an increased rating claim is on the evidence concerning the state of the disability from the time period one year before the claim was filed until VA makes a final decision on the claim. See generally Id. 

Inguinal hernias are evaluated under 38 C.F.R. § 4.114, Code 7338. A hernia that is small, reducible, or without true hernia protrusion or one that is not operated, but remediable are both rated as noncompensable. A 10 percent rating is warranted if the hernia is postoperative and recurrent, readily reducible, and well supported by truss or belt. A 30 percent rating is warranted if the hernia is small, postoperative recurrent, or unoperated irremediable, not well supported by truss, or not readily reducible. A 60 percent rating is warranted if the hernia is large, postoperative, recurrent, not well supported under ordinary conditions and not readily reducible, when considered inoperable.

The Board notes that it has reviewed all of the evidence in the Veteran's record, with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (VA must review the entire record, but does not have to discuss each piece of evidence). Hence, the Board will summarize the relevant evidence, as appropriate, and the Board's analysis will focus specifically on what the evidence shows, or does not show, as to the claim.

In July 2007, the Veteran filed a claim for an increased rating for his service-connected postoperative left inguinal hernia. At that time his service-connected postoperative left inguinal hernia was rated 0 percent disabling. On July 2008 VA digestive conditions examination, he reported a history of traditional open repair surgery on his left inguinal hernia in 1981. The surgery was successful and he had no recurrence of the left inguinal hernia, but there was intermittent discomfort at the surgical site. On physical examination there was no hernia present. The diagnosis was left inguinal hernia status post inguinal herniorrhaphy. Regarding his employability, at the time of the examination he was employed full-time in "security" for the past one to two years. The examiner noted that the disability did not cause significant effects on employment and no effects on his activities of daily living. 

In July 2008, the RO denied his claim for an increased (compensable) rating because the evidence did not show his service-connected postoperative left inguinal hernia was recurrent, readily reducible and well supported by truss or belt to warrant a 10 percent rating.

In April 2010 the Veteran underwent repair of a recurrent left inguinal hernia. Also, a June 2010 VA outpatient treatment report refers to a left inguinal hernia repair in April 2010. In March 2012, the RO increased the rating for postoperative left inguinal hernia to 10 percent effective April 27, 2010 (the date of the operative report and the first evidence showing the left inguinal hernia had increased in severity).

At the July 2014 Travel Board hearing, the Veteran testified that he believes he should be getting more that 10 percent for his hernia because of the pain and suffering he experienced for numerous years, from 1981 (the first surgery) to 2010 (the second surgery).

On April 2015 VA hernias examination, the Veteran reported that since the last compensation examination he developed an abdominal hernia, which started 2 years prior. He stated that since the onset of the abdominal hernia, there had been no change. He reported that after the initial left inguinal hernia repair in 1981, he had no complications. In 2009, he noticed the left inguinal enlargement again and had repeat surgical repair of the hernia in April 2010. He denied any post surgical complications. He stated further that in the past 2 years (since approximately April 2013) he noticed an abdominal bulge with swelling at times. He reported that the symptoms of the abdominal hernia are about the same since onset. He described current symptoms as abdominal swelling and he tries to push the bulge in but it does not reduce. He stated that his umbilical hernia has not worsened over time. He denied constipation and he has a bowel movement twice a day since he began taking laxatives. The abdominal swelling improves when he has a large bowel movement. On physical examination there was no left hernia detected, and no indication for a supporting belt. There were no scars that were painful and/or unstable, nor were the total area of all related scars greater than 39 square centimeters (6 square inches). A left inguinal hernia repair scar was well healed and measured 9 cm x 0.2 cm. The diagnosis was left inguinal hernia diagnosed March 1981 and recurrence of left hernia -- repeat surgical repair April 2010. The examiner noted that the Veteran's hernia disability did not impact his ability to work. She also noted that his left inguinal hernia repair scar is well healed without residual hernia recurrence or symptoms related to the scar with either repair done, in 1981 and 2010. He had described an abdominal hernia which was umbilical on examination. The umbilical hernia began around 2013 which was 3 years after his most recent hernia repair. The umbilical hernia is not associated with postoperative inguinal hernia residuals. 

As noted above, a compensable rating for postoperative left inguinal hernia repair under Code 7338 requires that a postoperative hernia be recurrent, readily reducible and well supported by truss or belt. Prior to April 27, 2010 the record is void of competent medical evidence that the Veteran had a recurrent hernia. On July 2008 VA digestive conditions examination, the examiner noted that his [1981] surgery was successful and he had no recurrence of the left inguinal hernia. Thus, in the absence of a recurrent inguinal hernia, prior to April 27, 2010, a compensable (10 percent) rating is not warranted for that period under Code 7338.

The Board acknowledges the Veteran's testimony that he experienced pain from the first left inguinal hernia repair in 1981 to the second one in 2010. In addition, it was noted in the July 2008 VA examination report that he had intermittent discomfort at the surgical site. The Veteran is competent to report symptoms capable of lay observation, such as pain. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). However, on physical examination in 2008 he did not have a hernia, nor were there any complaints regarding any residual scar. 

In summary, the Board finds that the competent and credible evidence of record is against the Veteran's claim for a compensable rating for postoperative inguinal hernia for the period prior to April 27, 2010. In light of the foregoing, the preponderance of the evidence is against the claim, and, therefore, the benefit-of-the-doubt doctrine does not apply. 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3.

Further, the Veteran's service-connected postoperative left inguinal hernia is rated 10 percent disabling from April 27, 2010. In order to warrant the next higher (30 percent) rating for postoperative left inguinal hernia under Code 7338, his postoperative left inguinal hernia must be small, postoperative recurrent, or unoperated irremediable, not well supported by truss, or not readily reducible. The evidence shows the Veteran had a recurrence of the left inguinal hernia and surgical repair in April 2010. He denied any postsurgical complications; and on physical examination in April 2015 there was no left inguinal hernia detected, and there was no indication for a supporting belt. Consequently, a rating higher than the 10 percent currently assigned is not warranted for the period from April 27, 2010. 

The Board acknowledges the Veteran's statement to the 2015 VA examiner that in the past 2 years he noticed an abdominal bulge with swelling at times. He is competent to report symptoms capable of lay observation, such as these. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). However, the Veteran's statement regarding such symptoms are contradicted by the medical record with respect to his left inguinal hernia. On VA examination in 2015 there was no left inguinal hernia detected. The examiner noted the Veteran is symptomatic with an umbilical hernia, which began around 2013 (3 years after his most recent hernia repair), and the umbilical hernia is not associated with his postoperative inguinal hernia repair.

In summary, the Board finds that the competent and credible evidence of record is against the Veteran's claim for a rating in excess of 10 percent for postoperative inguinal hernia for the period from April 27, 2010. In light of the foregoing, the preponderance of the evidence is against the claim, and, therefore, the benefit-of-the-doubt doctrine does not apply. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

The Board has considered whether a rating for a left inguinal hernia repair scar is warranted during the appeal period and find that while the Veteran has a scar (there is no evidence that there is more than one scar) related to his service-connected postoperative inguinal hernia, VA examiner (2015) noted the scar was not painful and/or unstable, or was the total area of all related scars greater than 39 square centimeter (6 square inches). The 2015 VA examiner described the Veteran's left inguinal hernia repair scar as well healed measuring 9 cm x 0.2cm. Consequently, a compensable rating is not warranted for a scar. See 38 C.F.R. § 4.118, Code 7804 (2015), Code 7801-7805 (2008).

The Board has considered whether referral for extraschedular consideration is warranted for the Veteran's postoperative left inguinal hernia. There is no objective evidence of impairment due to symptoms of postoperative left inguinal hernia not encompassed by the schedular rating assigned for each period under consideration. The Veteran has not claimed any left inguinal hernia symptomatology not included in the rating criteria. Hence, his disability picture is not exceptional. Therefore, the schedular criteria are not inadequate, and referral for extraschedular consideration of his postoperative left inguinal hernia for the stated periods is not warranted. 38 C.F.R. § 3.321(b); Thun v. Peake, 22 Vet. App. 111 (2008). 

Finally, the evidence of record does not suggest, and the Veteran has not alleged unemployability due to his postoperative left inguinal hernia. The 2008 VA examination report reflects that the examiner noted that the disability did not cause significant effects on employment. The 2015 VA examiner noted that the Veteran's postoperative left inguinal hernia did not impact his ability to work. There is no opposing opinion in the record with respect to unemployability as a result of the left inguinal hernia. Accordingly, the Board finds that the matter of entitlement to a total rating based on individual unemployability is not raised in the context of this claim. See Rice v. Shinseki, 22 Vet. App. 447 (2009).


ORDER

Entitlement to a compensable rating for postoperative left inguinal hernia prior to April 27, 2010, and to a rating in excess of 10 percent from April 27, 2010 is denied.


REMAND

In November 2014, the Board remanded the matter of service connection for migraine headaches, including as secondary to service-connected psychiatric disability and/or medications associated with service-connected disabilities, in part, to obtain an opinion by a physician regarding whether the Veteran's headaches are caused or aggravated by his service-connected disabilities. Subsequent April 2015 and September 2015 medical opinions addressed the matter. The April 2015 VA examiner notes the following:

Per review of records in Vista Web, he has been taking his current Carvedilol, Lisinopril, and Pravastatin since 2010. There is possibility of medication related headaches, especially with polypharmacy and multiple comorbidities. I cannot say with absolute certainty that his heart medications are or [are] not an attributing or aggravating factor. Mental health would need to evaluate him for possible effect of his mental health medications on his headaches.

In the September 2015 VA examination report and medical opinion, the examiner provided an opinion that addressed whether the Veteran's headaches are aggravated by his mental health medications. She did not further address whether his headaches are aggravated by his heart medications. Since the April 2015 VA examiner used an incorrect standard "absolute certainly" as opposed to the "at least as likely as not" standard required in claims for VA benefits, a supplemental medical opinion is necessary. Further, the migraine claim appears to be inextricably intertwined with the Veteran's petition to reopen the claim of entitlement to service connection for ischemic heart disease that is remanded herein. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991).

As discussed in the Introduction above, in July 2014 correspondence, the Veteran disagreed with the August 2013 rating decision, which declined to reopen the claims of service connection for ischemic heart disease and type 2 diabetes mellitus because new and material evidence had not been submitted, denied service connection for erectile dysfunction and denied an increased rating in excess of 30 percent for major depressive disorder. The Veteran's July 2014 correspondence is a timely NOD with the claims decided in the August 2013 rating decision. Thus, the Veteran has initiated appeals of those issues. However, an SOC has not been issued with respect to those claims. Consequently, the Board is required to remand the matters for such action. Manlincon, 12 Vet. App. 238.

Accordingly, the case is REMANDED for the following action:

1. Please obtain a supplemental medical opinion (with examination only if deemed necessary by the opinion provider) from the April 2015 VA examiner (or from another appropriate medical provider if the April 2015 VA examiner is no longer available). The medical opinion provider should respond to the following question:

* Is it at least as likely as not (a 50% or better probability) that the Veteran's headache disability is either caused by or aggravated by medication taken for a heart disability?

The opinion provider is requested to explain the rationale for all opinions provided. 

2. Furnish the Veteran with an SOC with respect to his petitions to reopen the claims of service connection for ischemic heart disease and type 2 diabetes mellitus, and his claims for service connection for erectile dysfunction and an increased rating in excess of 30 percent for major depressive disorder. Afford him and his representative a reasonable opportunity for response. The Veteran should be informed that he must file a timely and adequate substantive appeal in order to perfect his appeal of these issues to the Board. As to any issue where a timely substantive appeal is received, such issue should be returned to the Board for appellate review.

3. The AOJ should then review the record and readjudicate the claim of service connection for migraine headaches, including as secondary to service-connected psychiatric disability and/or medications associated with service-connected disabilities. Thereafter, the case should be returned to the Board, if in order, for further review and final adjudication.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
M. C. GRAHAM
Veterans Law Judge, Board of Veterans' Appeals




Department of Veterans Affairs